WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Mecerdes Barrera, | ) | No. CV 11-348-TUC-HCE |
| Plaintiff, | ) | |
| | ) | **ORDER** |
| vs. | ) | |
| | ) | |
| Michael J. Astrue, Commissioner of the | ) | |
| Social Security Administration, | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

Plaintiff has filed the instant action seeking review of the final decision of the Commissioner of Social Security pursuant to 42 U.S.C. § 405(g). The Magistrate Judge has jurisdiction over this matter pursuant to the parties' consent. *See* 28 U.S.C. § 636(c).

Pending before the Court are Plaintiff's Opening Brief (Doc. 14), Defendant's Opposition to Plaintiff's Opening Brief (Doc. 15) (hereinafter "Defendant's Brief"), and Plaintiff's Reply Brief (Doc. 18) (hereinafter "Plaintiff's Reply"). For the following reasons, the Court will remand the matter for further proceedings.

I.     PROCEDURAL HISTORY

In June 2008, Plaintiff applied for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 416(i), 423 (d). (TR. 129-130). Plaintiff's application was denied initially and denied  on reconsideration, after which she requested a hearing before an administrative law judge. (TR. 70-73, 75-78).  The matter came on for hearing in

1   December 2009 before Administrative Law Judge (hereinafter "ALJ") Kathleen Gavin (TR.
2   41-65).  Plaintiff and vocational expert Victoria Ray testified at the hearing. (TR. 41-43, 59-
3   65).  On May 7, 2010, the ALJ issued her decision denying Plaintiff's claim. (TR. 30-39).
4   On May 5, 2011, the Appeals Council denied Plaintiff's request for review, thereby rendering
5   the ALJ's May 7, 2010 decision the final decision of the Commissioner. (TR. 1-7). Plaintiff
6   then initiated the instant action.

7   II.      INTRODUCTION

8          Plaintiff alleges a disability onset date of August 11, 2006.  (TR. 145).  Plaintiff
9   claims she is unable to work due to back injury, depression, pain and numbness in her legs,
10  neck popping, headaches, fatigue, sensitivity and lack of enthusiasm. (TR. 149).

11         Plaintiff was born on November 1, 1970, and was 35 years of age on the alleged
12  disability onset date. (TR. 39, 129). Plaintiff went through the ninth grade in Mexico. (TR.
13  47, 56).  Plaintiff is divorced and lives with her four children who, at the time of the hearing,
14  were 17, 13, 10, and 9 years of age. (TR. 45).  From 2004 through 2006, Plaintiff worked
15  as a bus driver and performed a variety of jobs related to maintaining buses. (TR. 150, 279).
16  From 2001 to 2003, she worked at a temporary work agency where she filled jobs such as
17  assembly and janitorial work.  (Id.).   In August 2006, Plaintiff was injured "on a traffic
18  control" device while driving the bus. (TR. 492).  "She stepped down off the bus and felt a
19  pull on the left leg....On her way to the hospital [for attention to the injury she sustained on
20  the bus], she was involved in a car accident.  The injury further resulted in a lower back pain,
21  neck pain and headache." (Id.).

22         Plaintiff testified that she has a great deal of pain in her neck and lower back.  (TR.
23  51). Pain also radiates down her legs and she experiences numbness as well. (Id.).  Plaintiff
24  can sit for one-half hour, stand for 15 minutes, and walk for 5 to 7 minutes. (TR. 52).  She
25  cannot pick up a gallon of milk.  (Id.).  "I haven't tried anything heavier then that because
26  I don't have the strength in my lower back and my waist."  (TR. 52-53). Plaintiff's
27  depression makes her sad and unable to concentrate.  (TR. 53).  Plaintiff takes morphine,
28  oxycodone, and naproxen for pain.  (TR. 51-52).  She also takes medication for depression.

1   (TR. 52). Plaintiff's medications make her sleepy and dizzy. (*Id.*). Plaintiff also uses a bone
2   stimulator for her back. (TR. 56). She wears a back brace recommended by her surgeon,
3   Dr. Hanks. (*Id.* at pp. 56-57). Plaintiff's therapist recommended that she use a cane until her
4   legs feel stronger. (TR. 48 (Plaintiff arrived at the hearing using a cane)).

5       Plaintiff's field office disability report indicates that she is Spanish-speaking only, and
6   the ALJ found that Plaintiff "is not able to communicate in English, and is considered the
7   same way as an individual who is illiterate in English...." (TR. 38, 146; *see also* TR. 44
8   (Plaintiff testified through an interpreter at the hearing before the ALJ)).

9   III.   THE ALJ'S FINDINGS

10      A.   Claim Evaluation

11      SSA regulations require the ALJ to evaluate disability claims pursuant to a five-step
12  sequential process. 20 C.F.R. §§404.1520, 416.920; *Baxter v. Sullivan,* 923 F.2d 1391, 1395
13  (9th Cir. 1991). The first step requires a determination of whether the claimant is engaged
14  in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, then the
15  claimant is not disabled under the Act and benefits are denied. *Id.* If the claimant is not
16  engaged in substantial gainful activity, the ALJ then proceeds to step two which requires a
17  determination of whether the claimant has a medically severe impairment or combination of
18  impairments. 20 C.F.R. §§ 404.1520(c), 416.920(c). In making a determination at step two,
19  the ALJ uses medical evidence to consider whether the claimant's impairment more than
20  minimally limited or restricted his or her physical or mental ability to do basic work
21  activities. *Id.* If the ALJ concludes that the impairment is not severe, the claim is denied.
22  *Id.* If the ALJ makes a finding of severity, the ALJ proceeds to step three which requires a
23  determination of whether the impairment meets or equals one of several listed impairments
24  that the Commissioner acknowledges are so severe as to preclude substantial gainful activity.
25  20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. Pt. 404, Subpt. P, App.1. If the claimant's
26  impairment meets or equals one of the listed impairments, then the claimant is presumed to
27  be disabled and no further inquiry is necessary. If a decision cannot be made based on the
28  claimant's then current work activity or on medical facts alone because the claimant's

impairment does not meet or equal a listed impairment, then evaluation proceeds to the fourth step.   The fourth step requires the ALJ to consider whether the claimant has sufficient residual functional capacity (hereinafter "RFC")[1] to perform past work.    20 C.F.R. §§ 404.1520(e), 416.920(e).  If the ALJ concludes that the claimant has RFC to perform past work, then the claim is denied.  *Id.*  However, if the claimant cannot perform any past work due to a severe impairment, then the ALJ must move to the fifth step, which requires consideration of the claimant's RFC to perform other substantial gainful work in the national economy in view of claimant's age, education, and work experience.   20 C.F.R. §§ 404.1520(f). 416.920(f).   At step five, in determining whether the claimant retained the ability to perform other work, the ALJ may refer to Medical Vocational Guidelines (hereinafter "grids") promulgated by the SSA.  *Desrosiers v. Secretary,* 846 F.2d 573, 576-577 (9th Cir. 1988).  The grids are a valid basis for denying claims where they accurately describe the claimant's abilities and limitations.  *Heckler v. Campbell,* 461 U.S. 458, 462, n.5 (1983).  However, because the grids are based on exertional or strength factors, the grids do not apply where the claimant has significant nonexertional limitations. *Penny v. Sullivan,* 2 F.3d 953, 958-959 (9th Cir. 1993); *Reddick v. Chater,* 157 F.3d 715, 729 (9th Cir. 1998). When the grids do not apply,   the ALJ must use a vocational expert in making a determination at step five.  *Desrosiers,* 846 F.2d at 580.

B.      The ALJ's Decision

In her May 7, 2010 decision, the ALJ made the following findings:

1.      The claimant meets the insured status requirements of the Social Security Act through December 31, 2010.

2.      The claimant has not engaged in substantial gainful activity since August 11, 2006, the alleged onset date (20 CFR 404.1571 *et seq.*).

3.      The claimant has the following severe impairments: degenerative disc disease of the lumbar spine and depression. (20 CFR 404.1520(c)).

---

[1]RFC is defined as that which an individual can still do despite his or her limitations. 20 C.F.R. §§ 404.1545, 416.945.

1        ***

2    4.    The claimant does not have an impairment or combination of
           impairments that meets or medically equals one of the listed
3          impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20
           CFR 404.1520(d), 404.1525 and 404.1526).
4
           ***
5
     5.    After careful consideration of the entire record, the undersigned
6          finds that the claimant has the residual functional capacity to
           perform less than the full range of sedentary work as defined in
7          20 CFR 404.1567(a).  Claimant is limited to simple work with
           limited changes in the work environment and requires the option
8          to alternate between standing and sitting to alleviate pain.
           ***
9
     6.    The claimant is unable to perform any past relevant work. (20
10         CFR 404.1565).
           ***
11
     7.    The claimant was born on November 1, 1970 and was 35 years
12         old, which is defined as a younger individual age 18-44, on the
           alleged disability onset date. (20 CFR 404.1563).
13
     8.    The claimant is not able to communicate in English, and is
14         considered in the same way as an individual who is illiterate in
           English (20 CFR 404.1564).
15
     9.    Transferability of job skills is not material to the determination
16         of disability because using the Medical-Vocational Rules as a
           framework supports a finding that the claimant is "not disabled,"
17         whether or not the claimant has transferable job skills (See SSR
           82-41 and 20 CFR Part 404, Subpart P, Appendix 2).
18
     10.   Considering the claimant's age, education, work experience, and
19         residual functional capacity, there are jobs that exist in
           significant numbers in the national economy that the claimant
20         can perform (20 CFR 404.1569 and 404.1569(a)).
           ***
21
     11.   The claimant has not been under a disability, as defined in the
22         Social Security Act, from August 11, 2006, through the date of
           this decision (20 CFR 404.1520(g)).
23

24                              <u>DECISION</u>

25   Based on the application for a period of disability and disability insurance
     benefits filed on June 3, 2008, the claimant is not disabled under sections
26   216(i) and 223(d) of the Social Security Act.

27   (TR. 30-39).

28

1    IV.    DISCUSSION

2          A.    Standard of Review

3          An individual is entitled to disability insurance benefits if he or she meets certain

4    eligibility requirements and demonstrates the inability to engage in any substantial gainful

5    activity by reason of any medically determinable physical or mental impairment which can

6    be expected to result in death or which has lasted or can be expected to last for a continuous

7    period of not less than twelve months.  42 U.S.C. §§ 423, 1382.  "'A claimant will be found

8    disabled only if the impairment is so severe that, considering age, education, and work

9    experience, that person cannot engage in any other kind of substantial gainful work which

10   exists in the national economy.'"  *Penny,* 2 F.3d at 956 (*quoting Marcia v. Sullivan,* 900 F.2d

11   172, 174 (9th Cir. 1990)).

12         To establish a *prima facie* case of disability, the claimant must demonstrate an

13   inability to perform his or her former work. *Gallant v. Heckler*, 753 F.2d 1450, 1452 (9th Cir.

14   1984).  Once the claimant meets that burden, the Commissioner must come forward with

15   substantial evidence establishing that the claimant is not disabled.  *Fife v. Heckler*, 767 F.2d

16   1427, 1429 (9th Cir. 1985).

17         The findings of the Commissioner are conclusive and courts may overturn the

18   decision to deny benefits "only if it is not supported by substantial evidence or it is based on

19   legal error."  *Matney v. Sullivan,* 981 F.2d 1016, 1019 (9th Cir. 1992)(citations omitted).

20   Therefore, the Commissioner's determination that a claimant is not disabled must be upheld

21   if the Commissioner applied the proper legal standards and if the record as a whole contains

22   substantial evidence to support the decision.  *Clem v. Sullivan*, 894 F.2d 328, 330 (9th Cir.

23   1990) (*citing Desrosiers*, 846 F.2d at 575-76; *Delgado v. Heckler*, 722 F.2d 570, 572 (9th

24   Cir. 1983)).  Substantial evidence is defined as such relevant evidence which a reasonable

25   mind might accept as adequate to support a conclusion.  *Jamerson v. Chater,* 112 F.3d 1064,

26   1067-68 (9th Cir. 1997); *Winans v. Bowen,* 853 F.2d 643, 644 (9th Cir. 1988).  However,

27   substantial evidence is less than a preponderance.  *Matney,* 981 F.2d at 1019.

28

1    The Commissioner, not the court, is charged with the duty to weigh the evidence,

2    resolve material conflicts in the evidence and determine the case accordingly. *Id.* However,

3    when applying the substantial evidence standard, the court should not mechanically accept

4    the Commissioner's findings but should review the record critically and thoroughly. *Day v.*

5    *Weinberger*, 522 F.2d 1154 (9th Cir. 1975). Reviewing courts must consider the evidence

6    that supports as well as detracts from the examiner's conclusion. *Id.* at 1156.

7         B.    Analysis

8              1.    Whether the ALJ erroneously evaluated Dr. Goodrich's opinion

9                    a.    Limitation on standing and/or walking

10   At step 5, with a narrow exception not applicable in this case, a claimant who is

11   unable to work on a "regular and continuing basis" for "8 hours a day, for 5 days a week, or

12   an equivalent work schedule," is considered disabled. SSR 96-8p, 1996 WL 374184 at *2.[2]

13   Plaintiff contends that Martha Goodrich, M.D., opined that Plaintiff could not work an 8-

14   hour day and, thus, the ALJ's decision cannot be reconciled with that opinion.

15   Plaintiff began treatment with Rinly Gecosala, M.D., in September 2006, shortly after

16   her accidents. (TR. 492). He ordered Plaintiff off work. (TR. 493). In October 2006, he

17   released Plaintiff "to work with no lifting more than 10 pounds and no extensive walking and

18   prolong[ed] standing." (TR. 472).

19   In August 2008, Dr. Goodrich, a non-examining, State-agency physician, opined that

20   Plaintiff could: occasionally lift up to 10 pounds; frequently carry less than 10 pounds; stand

21

22

23

24   [2]Social Security Rulings "reflect the official interpretation of the [Social Security
Administration] and are entitled to some deference as long as they are consistent with the
25   Social Security Act and regulations." *Massachi v. Astrue,* 486 F.3d 1149, 1152 n.6 (9th Cir.
2007) (internal quotation marks and citations omitted); *see also Holohan v. Massanari,* 246
26   F.3d 1195, n.1 (9th Cir. 2001) ("SSRs do not have the force of law. However, because they
represent the Commissioner's interpretation of the agency's regulations, we give them some
27   deference."). Additionally, once an SSR is published, it is "binding precedent upon ALJs."
*Gatliff v. Commissioner of Social Security,* 172 F.3d 690, 692 n.2 (9th Cir. 1999).

1    and/or walk a total of "less than 2 hours in an 8-hour work day"[3]; sit "about 6 hours in an 8-
2    hour workday"; occasionally climb ramps or stairs, balance, stoop, or crouch; never climb
3    ladders, ropes or scaffolds; never kneel or crawl.  (TR. 708-709).  Dr. Goodrich also found
4    that Plaintiff was limited in reaching in all directions, including overhead, and she should
5    avoid concentrated exposure to vibration and hazards, such as machinery and heights.  (TR.
6    710-711).

7        The ALJ gave "Dr. Gecosala's opinion considerable weight as it is consistent with his
8    clinical documentation and the record as a whole."  (TR. 35).    When discussing Dr.
9    Goodrich's  opinion, the ALJ stated, in pertinent part, that "Dr. Goodrich was of the opinion
10   that claimant would be limited to...walking/standing no more than 2 hours and sitting 6 hours
11   in an 8 hour workday...."  (*Id.*).   The ALJ gave "Dr. Goodrich's opinion considerable
12   weight..." noting that it "is more consistent with the record as a whole including the opinion
13   of Dr. Gecosala shortly following claimant's injury."  (TR. 36).

14       When questioning the VE, the ALJ did not refer to limitations on standing, walking
15   and/or sitting, other than to say that the "person can perform work at the sedentary exertional
16   level...."  (Tr. 61).  Sedentary work requires standing or walking "from very little up to
17   one-third of the time...[and] should generally total no more than about 2 hours of an 8-hour
18   workday...[S]itting should generally total approximately 6 hours of an 8-hour workday."  SR
19   83-10, 1993 WL 31251 at *5; *see also* SSR 96-9p, 1996 WL 374185 at *6 ("In order to
20   perform a full range of sedentary work, an individual must be able to remain in a seated
21   position for approximately 6 hours of an 8-hour workday...").  Moreover, "[i]f an individual
22   can stand and walk for a total of slightly less than 2 hours per 8-hour workday, this, by itself,
23   would not cause the occupational base to be significantly eroded."  SSR 96-9p, 1996 WL
24   374185 at *6.  The Physical Residual Functional Capacity Assessment form completed by

25

26       [3]Dr. Goodrich also stated: "Limit Stand/Walk to slightly <2 hrs/day."  (TR. 708).  Dr.
27   Goodrich noted that Plaintiff was "diagnosed with an intervertebral disc injury, likely at L5-
     S1 and continues in treatment for this condition to date.  Claimant is limited by back pain and
28   decreased strength/ROM of the lumbar spine.  (*Id.*).

1   Dr. Goodrich provided the following options, in pertinent part, for standing and/or walking:

2       less than 2 hours in an 8-hour workday (which Dr. Goodrich selected)

3       at least 2 hours in an 8-hour workday

4   The form provided the following options for sitting:

5       less than about 6 hours in an 8 h-hour workday

6       about 6 hours in an 8-hour workday (which Dr. Goodrich selected)

7       must periodically alternate sitting and standing to relieve pain or discomfort.

8   (TR. 708).

9       The ALJ's statement that Plaintiff could stand and/or walk "no more than 2 hours..."

10  (TR. 35) does not precisely reflect Dr. Goodrich's limitation that Plaintiff could stand and/or

11  walk for "slightly <2 hrs/ day". (TR. 708). The ALJ's characterization arguably implies that

12  Plaintiff could stand and/or walk up to and including 2 hours per day but no more; whereas,

13  Dr. Goodrich is clear that Plaintiff was limited to *less* than 2 hours per day.  However,

14  Defendant argues that this makes no difference because Dr. Goodrich did not preclude

15  Plaintiff from "sitting for more than six hours per day." (Defendant's Brief, pp. 8-9 (*citing*

16  TR. 708)).  Thus, according to Defendant, the limitations identified by Dr. Goodrich fell

17  within the definition of sedentary work.  Plaintiff counters that "[c]ontrary to the

18  Commissioner, when a physician says 'about' six hours, the physician does not mean more

19  than six hours."  (Plaintiff's Reply, p. 2).

20      The form Dr. Goodrich completed did not provide an option to indicate whether

21  Plaintiff could sit more than 6 hours.  Nor did Dr. Goodrich indicate in her written comments

22  that Plaintiff is either precluded from sitting for more than six hours, or is able to sit for more

23  than six hours.  The record reflects that treating Dr. Gecosala, who indicated limitations on

24  walking and standing, did not limit the amount of time Plaintiff could sit.  The definition of

25  sedentary work, which contemplates sitting for "approximately 6 hours...", is arguably

26  consistent with use of "about 6 hours" on the form completed by Dr. Goodrich.  In most

27  cases, the increment of time a doctor ascribes to terms such as "about" or "approximately"

28  may not be dispositive.  In this case it is, both in terms of Plaintiff's RFC and, if the ALJ's

1  inquiry proceeds, then to questions posed to the VE.

2      On this record, without clarification, the Court is not in the position to determine

3  whether any error was harmless.  *See e.g. Tommasetti v. Astrue,* 533 F.3d 1035, 1038 (9th Cir.

4  2008) ("the court will not reverse an ALJ's decision for harmless error, which exists when

5  it is clear from the record that the ALJ's error was inconsequential to the ultimate

6  nondisability determination.") (internal quotation marks and citations omitted)).

7              b.      Limitation regarding need to shift position

8      The ALJ's RFC assessment included the finding that Plaintiff "requires the option to

9  alternate between standing and sitting to alleviate pain."  (TR. 33).  The ALJ's questions

10  posed to the VE included the following:

11      What if I added a sit/stand option to this. [sic] That she'd stay at her
        workstation but needed to shift from sitting to a standing position occasionally
12      to relieve pain.  Would there be any jobs?

13  (TR. 61).  The VE responded: "She could do the same jobs and alternate between sit/stand."[4]

14  (*Id.*).

15      Plaintiff asserts that the ALJ's RFC assessment is deficient with regard to Plaintiff's

16  need to alternate sitting and standing because the ALJ did not specify the duration of

17  uninterrupted sitting and standing.  (Plaintiff's Opening Brief, p. 10).  Plaintiff also argues

18  that the hypothetical question posed to the VE incorrectly stated the ALJ's RFC finding with

19  regard to Plaintiff's need to alternate between standing and sitting.  (*Id.* at p.9).  Defendant

20  contends that the hypothetical posed was more restrictive than the ALJ's finding, "and, if

21  Plaintiff could perform the jobs found by the vocational expert, she could perform work at

22  the residual functional capacity level found by the ALJ."  (Defendant's Brief, p. 10).

23      SSR 96-9p provides, in pertinent part:

24      An individual may need to alternate the required sitting of sedentary work by
        standing (and, possibly, walking) periodically. Where this need cannot be
25      accommodated by scheduled breaks and a lunch period, the occupational base
        for a full range of unskilled sedentary work will be eroded. The extent of the
26

27      [4]The VE is referring to the following jobs: bench hand, table worker, and sorter. (TR.
28  61).

- 10 -

erosion will depend on the facts in the case record, such as the frequency of the need to alternate sitting and standing and the length of time needed to stand. *The RFC assessment must be specific as to the frequency of the individual's need to alternate sitting and standing.* It may be especially useful in these situations to consult a vocational resource in order to determine whether the individual is able to make an adjustment to other work.

SSR 96-9p, 1996 WL 374185, at 7 (emphasis added).

In contrast to SSR 96-9p, the ALJ's RFC assessment did not specify "the frequency of...[Plaintiff's] need to alternate sitting and standing." *Id.* This lack of specificity, in turn, led to the issue Plaintiff raises concerning the hypothetical question posed to the VE.

It is well-settled that the ALJ's hypothetical question posed to the VE must "include all of the claimant's functional limitations, both physical and mental." *Flores v. Shalala,* 49 F.3d 562, 570 (9th Cir. 1995). *See also Valentine v. Commissioner,* 574 F.3d 685, 690 (9th Cir. 2009); *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988). According to Plaintiff, the hypothetical question was not accurate in light of the RFC assessment, and substantial evidence does not support the ALJ's reliance on the VE's answer. (Plaintiff's Opening Brief, pp. 9-10)

Defendant states that "when read in context, the ALJ intended that the residual functional capacity would be for sitting and standing at will." (Defendant's Brief, p. 10 (*citing* TR. 33)). However, Plaintiff points out that the use of the word "occasionally" in the hypothetical meant that she could change positions only up to one-third of the work day. (Plaintiff's Opening Brief, p. 9 (*citing* SSR 83-10, 1993 WL 31251, (defining "occasionally")). According to Plaintiff, because the VE's testimony only supports that the jobs offered a sit/stand option during one-third of the work day, the record does not support a finding that she would be able to change positions two-thirds of the workday. (Plaintiff's Reply, p. 5).

Defendant asserts that the ALJ RFC's assessment intended for Plaintiff to alternate between sitting and standing at will. (Defendant's Brief, p. 10). The hypothetical question posed did not reflect such a finding. Further, the ALJ's use of the word "occasionally", which has a specific meaning in terms of RFC, in her hypothetical question suggested that

1    Plaintiff would need to alternate between sitting and standing only one-third of the time.

2    That question is clearly not consistent with the need to alternate sitting and standing at will.[5]

3    Consequently, Plaintiff is correct that the hypothetical question did not properly account for

4    Plaintiffs need to alternate sitting and standing. Without clarification from a VE on this issue,

5    it is not possible to determine whether the error is harmless.

6                              c.      Limitation regarding reaching

7            Dr. Goodrich marked a box indicating that Plaintiff was limited regarding reaching

8    in all directions, including overhead.  (TR. 710).  Dr. Goodrich further explained that

9    Plaintiff was limited "to occasional..." reaching above shoulder height with either arm due

10   to back pain.  (*Id.*).  Plaintiff points out that, although the ALJ gave Dr. Goodrich's opinion

11   considerable weight, the ALJ's RFC assessment did not include the limitation on reaching.

12   (Plaintiff's Opening Brief, p. 7).  Moreover, the ALJ failed to mention it to the VE.  (*See* TR.

13   61-65).  Defendant contends that the ALJ, by limiting Plaintiff to sedentary work, necessarily

14   accounted for any reaching above shoulder height because there is no indication that

15   "sedentary work requires reaching over shoulder level more than occasionally."

16   (Defendant's Brief, p. 9).

17           The position of bench hand involves constant reaching, *i.e.,* 2/3 or more of the time.

18   (Plaintiff's Opening Brief, Exh. A, p. 8).  The position of table worker involves frequent

19   reaching, *i.e.,* from1/3 to 2/3 of the time.  (*Id.* at p.12).[6] Generally, "Reaching" pertains to

20   extending the hands and arms in any direction.  SSR 85-15, 1985 WL 56857 at *7.

21   Defendant stresses that the DOT for bench hand and table worker "do not indicate that any

22

23           [5]Defendant argues that the hypothetical question was *more* restrictive than the at will
24   assessment.  That may be so if, on a given day, Plaintiff only needed to alternate sitting and
     standing less than one-third of that day.  However, the at will finding can also support the
25   conclusion that, on any given day, Plaintiff will need to alternate sitting and standing more
     than one-third of the day.
26

27           [6]As discussed *infra,* at IV.B.2.a., the Commissioner has conceded it was erroneous to
     include the job of sorter as a job Plaintiff can perform. Given that the sorter position is no
28   longer at issue, the Court will not consider that position.

overhead reaching is required." (Defendant's Brief, p. 9)  However, "[t]he DOT does not distinguish between types of reaching...." *Marquez v. Astrue,* 2012 WL 3011778 at *3 (D.Ariz. May 2, 2012), *Report and Recommendation adopted by*, 2012 WL 3011779 at *3 (D. Ariz. July 23, 2012) (affirming remand for further development where, *inter alia,* a "conflict [exists] between VE testimony that a claimant  limited in overhead reaching can perform particular jobs and DOT descriptions that those jobs require frequent reaching."); *see also* Plaintiff's Reply, p. 3).  On the instant record, given that only two jobs identified by the VE remain for consideration, and one of those jobs involves frequent reaching, the ALJ should have inquired whether such job involves reaching over the shoulder.   This is especially so given that the ALJ's hypothetical question failed to inform the VE that such restriction even existed. *See Embrey,* 849 F.2d at 423 ("Because the hypothetical question posed by the ALJ to the vocational expert did not reflect all of [plaintiff's] limitations, the expert's opinion has no evidentiary value and cannot support the ALJ's decision.")

d.     Limitation regarding hazards

Dr. Goodrich indicated that Plaintiff should avoid concentrated exposure to hazards such as machinery and heights. (TR. 711).  The ALJ did not mention this limitation in her RFC assessment or her hypothetical questions to the VE.  Plaintiff argues such omission is erroneous.  Review of the DOT listings for the bench hand and table worker positions reflect that moving mechanical parts are not involved in performance of either position.  (*See* Plaintiff's Opening Brief, Exh. A, pp. 9, 13).  Thus, it is arguable that the ALJ's failure to explore this issue with the ALJ is of no moment.  However, as discussed *infra,* at IV.B.5., the case must be remanded for further proceedings for other reasons; on remand this limitation on Plaintiff's ability to perform other work at the step 5 of analysis can be explored as well.

2.     Whether substantial evidence supports the conclusion that Plaintiff could perform the work identified by the Vocational Expert

"The Social Security Administration has taken administrative notice of the *Dictionary of Occupational Titles*, which is published by the Department of Labor and gives detailed

physical requirements for a variety of jobs."[7]   *Massachi,* 486 F.3d at 1153 n.8 (*citing* 20 C.F.R. §416.966(d)(1); *Prochaska v. Barnhart,* 454 F.3d 731, 735 n.1 (7th Cir. 2006)). "In making disability determinations, the Social Security Administration relies primarily on the *Dictionary of Occupational Titles* for 'information about the requirements of work in the national economy.'" *Massachi,* 486 F.3d at 1153  (*quoting* SSR 00-4p, 2000 WL 1898704, *2).  The ALJ may also use testimony form a vocational expert to obtain occupational evidence.  *Id.*

Plaintiff argues that the VE incorrectly stated that her testimony was consistent with the DOT.  (Plaintiff's Opening Brief, pp. 11-15).  Plaintiff contends that the VE's mistake resulted in the ALJ's failure to make inquiries necessary to rely on the VE's testimony.  (*Id.*). Plaintiff takes specific issue with testimony concerning: her need to alternate sitting and standing; her inability to communicate in English; and her requirement for unskilled work.

The Ninth Circuit has held that:

> Although evidence provided by a vocational expert "generally should be consistent" with the *Dictionary of Occupational Titles,* "[n]either the [*Dictionary of Occupational Titles*] nor the [vocational expert]...evidence automatically 'trumps' when there is a conflict." Thus, the ALJ must first determine whether a conflict exists.  If it does, the ALJ must then determine whether the vocational expert's explanation for the conflict is reasonable and whether a basis exists for relying on the expert rather than the *Dictionary of Occupational Titles.*

*Massachi,* 486 F.3d at 1153 (*quoting* SSR 004-p, 2000 WL 1898704 at *2) (bracketed text in original); *see also Johnson,* 60 F.3d at 1435  ("We make explicit here that an ALJ may rely on expert testimony which contradicts the DOT, but only insofar as the record contains persuasive evidence to support the deviation.").  Moreover, when a VE provides evidence about the requirements of a job or occupation, SSR 00-4p imposes on the ALJ "an *affirmative responsibility* to ask about any possible conflict between..." the VE's evidence

---

[7]"The DOT is 'the [Commissioner's] primary source of reliable job information.'...One purpose of the DOT is to classify identified job titles by their exertional and skill requirements." *Johnson v. Shalala,* 60 F.3d 1428, 1434 n.6 (9th Cir. 1995) (*quoting Terry v. Sullivan,* 903 F.2d 1273, 1276 (9th Cir. 1990)).

and the information provided in the DOT.  SSR 00-4p, 2000 WL 1898704 at *4 (emphasis added).  Further,

> [w]hen vocational evidence provided by a VE...is not consistent with information in the DOT, the adjudicator must resolve this conflict before relying on the VE...evidence to support a determination or decision that the individual is or is not disabled. *The adjudicator will explain in the determination or decision how he or she resolved the conflict. The adjudicator must explain the resolution of the conflict irrespective of how the conflict was identified.*

SSR 00-4p, 2000 WL 1898704 at *4 (emphasis added).[8]

In the instant case, the ALJ's hypothetical question assumed

> a person who can perform work at the sedentary exertional level...limit[ed]...to simple work and not a lot of changes in the work environment....She's 39-years-old, considered to be a younger individual, she's unable to communicate in English...

(TR. 61).  The ALJ later added the need to alternate sitting and standing "occasionally to relieve pain." (*Id.*).  As required, the ALJ asked the VE to "indicate any differences between your description and that in the *Dictionary of Occupational Titles.*"  (TR. 61).   The VE testified that such person could do simple, unskilled, sedentary work including:  bench hand, DOT 715.684-026; table worker, DOT 739.687-182; and sorter, DOT 209.687-022.  (TR. 61-62).  The VE identified no differences between the DOT and her testimony.  (TR. 61-65).

### a.     The sorter position

Plaintiff points out that the ALJ restricted Plaintiff to unskilled work, yet the job of Sorter identified by the VE has a Specific Vocational Preparation designation of 3, indicating semi-skilled work.  (Plaintiff's Opening Brief, p. 15 (citations omitted)).   Defendant "concedes that this is an unresolved conflict." (Defendant's Brief, p. 14).  Defendant argues the error is harmless given that there is a sufficient number of other jobs identified by the VE

---

[8]"SSR 00-4p gives examples of several reasonable explanations for deviating from the *Dictionary*.  Among them are that the *Dictionary* does not provide information about *all* occupations, information about a particular job not listed in the *Dictionary* may be available elsewhere and the general descriptions in the *Dictionary* may not apply to specific situations." *Massachi,* 486 F.3d at 1153 n.17 (*citing* SSR 00-4p, 2000 WL 1898704 at *2-*3).

1    in the state and national economies. (*Id.*). "Consequently, even if the ALJ had not

2    considered the sorter position, [s]he would have concluded that Plaintiff was not disabled."

3    (*Id.* at pp. 14-15). Given Defendant's concession, the Court will omit reference to the sorter

4    position in assessing Plaintiff's arguments. While that error, alone, would normally be

5    harmless, Plaintiff has pointed out other questions that must be resolved before the record

6    will support the conclusion that Plaintiff can perform any of the remaining jobs identified by

7    the VE.

8                        b.      Need to alternating sitting and standing

9            Plaintiff contends that unskilled, sedentary job requires sitting "'for approximately 6

10   hours of an 8-hour workday, with a morning break, a lunch period, and an afternoon break

11   at approximately 2-hour intervals....'" (Plaintiff's Opening Brief, pp.12-13 (*quoting* SSR 96-

12   9p, 1996 WL 374185 at *6); *see also DOT App. C.* 1991 WL 688702 (sedentary work under

13   the DOTs "involves sitting most of the time...."). According to Plaintiff, "[a]n unskilled

14   'sedentary' DOT occupation does not include the need for a sit/stand option or alternating

15   positions at shorter than an interval of two hours." (Plaintiff's Opening Brief, p. 13).

16   Defendant argues that, because the DOT does not address sit/stand options, there was no

17   conflict between the VE testimony and the cited DOTs. (Defendant's Brief, p. 11).   As

18   discussed *supra*, at IV.B.1.b., the ALJ's hypothetical question was defective with regard to

19   Plaintiff's need to alternate sitting and standing. Defendant contends that the ALJ meant for

20   Plaintiff to be able to alternate sitting and standing at will. (Defendant's Brief, p. 10). It is

21   unclear whether the VE's answer would be the same if she were asked if Plaintiff could

22   perform the work identified  given that Plaintiff must alternate sitting and standing at will.

23   This matter is better left addressed on remand.[9]

24   _____

25           [9]As to Defendant's argument that no conflict exists because the DOTs do not address
     the issue of a sit/stand option  (Defendant's Brief p. 11), courts within the Ninth Circuit
26   discussing this issue have not taken a unified approach. *Compare Hirschy v. Commissioner,*
     2012 WL 996527, *11 (E.D. Cal. Mar. 23, 2012 (VE testimony did not conflict with DOT
27   because DOT does not address a sit/stand option); *Harvey v. Astrue,* 2010 WL 2836817, *13-
     *14 (N.D. Cal. July 16, 2010)("Where the DOT does not include information about a
28

                                            - 16 -

1        c.      Education

2        The ALJ found that Plaintiff "is not able to communicate in English, and is considered

3    in the same way as an individual who is illiterate in English (20 CFR 404.1564)."  (TR. 38).

4    Illiteracy is defined as

5

6    ─────────────────────────

7    particular aspect of a job—such as the existence of a sit/stand option—it is proper to consult
     with a VE, as SSR 83–12 instructs. Such testimony supplements the DOT, rather than
8    conflicting with it. Accordingly, the ALJ did not err."); *with Pangle v. Astrue,* 2010 WL
     668912, *11-*12 (E.D. Cal. Feb. 23, 2010) (pointing out that "[i]n Massachi..., 486 F.3d.
9    1149, 1153-1154..., the Ninth Circuit found a conflict where the DOT did not indicate if a
     job could be performed with the given limitation. In this action, the DOT did not indicate if
10   the assembler or inspector positions could be performed with a sit/stand option, therefore
     creating a conflict that warranted inquiry...."  and recognizing that in the case at bar "it is
11   unclear whether the VE even believed there to be a conflict....Simply identifying positions,
     however, does not provide any explanation as to why the VE believed that such positions
12   would accommodate a sit/stand option."); *Smith v. Astrue,* 2011 WL 529858,*5-*6 (N.D.
     Cal. Nov. 3, 2011) (agreeing that VE's testimony that jobs were consistent with a sit/stand
13   option departed from the DOT description, but finding harmless error because on questioning
     by plaintiff's counsel, VE explained the basis for the departure); *Pearce v. Astrue,* 2009 WL
14   3698514, *4 (W.D.Wash. Nov. 3,2009) (where VE "merely testified" that there could be a
     sit/stand option, the testimony was not sufficient to provide a reasonable explanation for the
15   deviation).  In an unpublished decision, the Ninth Circuit  reversed a finding of harmless
     error where many of the occupations the VE identified under the DOT could not
16   accommodate the plaintiff's  need to switch between sitting, standing, and walking, yet the
     VE "testified that [plaintiff] could perform certain sedentary and light occupations, creating
17   an apparent conflict with the DOT."  *Coleman v. Astrue,* 423 Fed.Appx 754, 2011 WL
     1058448 *1-*2 (9th Cir. Mar. 24, 2011) ("The VE's explanations for this testimony were brief
18   and, so far as the record reveals, involved uninformed guesswork about the nature of the
     specified occupations. Such speculative explanations are insufficient to reconcile the conflict.
19   *See, e.g., Tommasetti v. Astrue,* 533 F.3d 1035, 1042 (9th Cir. 2008) (holding that 'brief and
     indefinite testimony' is not 'persuasive evidence' explaining a conflict"); *see also* 9th Cir.
20   R. 36-3 (regarding citation of unpublished decisions).  Given the unsettled state of the issue,
     it is arguable that the best course for the Commissioner on remand is to inquire as to the basis
21   for the VE's opinion concerning sit/stand options for any jobs identified for Plaintiff.

22

23

24

25

26

27

28

> the inability to read or write. We consider someone illiterate if the person cannot read or write a simple message such as instructions or inventory lists even though the person can sign his or her name. Generally, an illiterate person has had little or no formal schooling.

20 C.F.R. § 404.1564(b)(1).  The ALJ's hypothetical question posed to the ALJ assumed a person who is "unable to communicate in English."  (TR. 61).  Plaintiff points out that the each DOT occupation has a General Educational Development component that consists of three elements: Reasoning, Math, and Language.  (Plaintiff's Opening Brief, pp. 13-14 (*citing Dictionary of Occupational Titles,* App. C.)).  Of the remaining positions identified by the VE, table worker and bench hand have a Language Level of 1. (Plaintiff's Opening Brief, p. 14 (*citing* Exh. A)). Level 1, the lowest level of language development, provides that an individual must be able to read at a rate of 95–120 words per minute, print simple sentences containing a subject, verb and object, and a series of numbers, names and addresses, and speak simple sentences using present and past tenses.  (*Id.* at p. 14).  Plaintiff argues that the DOT occupations require education that Plaintiff does not have and the ALJ neither explored the conflict with the VE, nor set out a reasonable explanation supporting her decision that Plaintiff could perform such work.  (*Id.*).

> Defendant counters that the regulations contemplate such a conflict and provide:

> While illiteracy or the inability to communicate in English may significantly limit an individual's vocational scope, *the primary work functions in the bulk of unskilled work relate to working with things (rather than with data or people) and in these work functions at the unskilled level, literacy or ability to communicate in English has the least significance.* Similarly the lack of relevant work experience would have little significance since the bulk of unskilled jobs require no qualifying work experience. Thus, the functional capability for a full range of sedentary work represents sufficient numbers of jobs to indicate substantial vocational scope for those individuals age 18–44 even if they are illiterate or unable to communicate in English.

20 C.F.R. pt. 404, subpt. P, app. 2, § 201.00(h)(4)(i) (emphasis added).  Thus, according to Defendant, because the ALJ determined that Plaintiff could perform unskilled work, the ALJ did not need to specifically discuss the illiteracy issue *vis a vis* the jobs identified by the VE. (Defendant's Brief, p.14).

> The Commissioner has the burden at step-five to show that Plaintiff "can perform other work existing in the national economy, 'given his [or her] residual functional capacity,

age, education, and work experience.'" *Silveira v. Apfel,* 204 F.3d 1257, 1261 n. 14 (9th Cir. 2000) (*quoting Martinez v. Heckler*, 807 F.2d 771, 773 (9th Cir.1987)).  The ALJ may satisfy this burden by either obtaining testimony from a VE, or using the grids.  As in the instant case, where a claimant has both exertional and non-exertional limitations, "the grids are inapplicable [w]hen a claimant's non-exertional limitations are sufficiently severe so as to significantly limit the range of work permitted by the claimant's exertional limitations." *Hoopai v. Astrue,* 499 F.3d 1071, 1075 (9th Cir. 2007) (internal quotations and citations omitted); *see also Tackett v. Apfel,* 180 F.3d 1094, 1103-1104 (9th Cir. 1999) (plaintiff's need to shift positions every half hour precluded use of the grids).  In this case, the grids did not apply and the ALJ properly turned to a VE, thus Defendant's reliance solely on 20 C.F.R. pt. 404, subpt. P, app. 2, § 201.00(h)(4)(i) to support his position is problematic.

"A claimant is not *per se* disabled if he or she is illiterate."  *Pinto v. Massanari,* 249 F.3d 840, 847 (9th Cir. 2001); *see also Silveira ,* 204 F.3d at 1261 n. 14.  However, in the instant case, literacy is relevant as a vocational factor at step five in considering whether Plaintiff can perform other work.  *See Silveira,* 204 F.3d at 1261 n.14.  The Ninth Circuit has recognized that "[t]he ability to communicate is an important skill to be considered when determining what jobs are available to a claimant. Illiteracy seriously impacts an individual's ability to perform work-related functions, such as understanding and following instructions, communicating in the workplace, and responding appropriately to supervision." *Pinto,* 249 F.3d at 846.  In *Pinto,* the ALJ noted the plaintiff's illiteracy in his findings of fact and hypothetical question to the vocational expert, but "failed to explain how this limitation related to his finding that [plaintiff] could perform her past relevant work as generally performed." *Id.* at 847.[10]  The Ninth Circuit remanded, "hold[ing] that in order for an ALJ

---

[10]*Pinto* involved the ALJ's step-four determination. The *Pinto* court "decline[d] to reach the question whether illiteracy may properly be considered at step four of a disability determination[]", but decided to consider the factor based on the facts presented in that case. *See* 249 F.3d at 846 n.5. Given that the ALJ *must* consider Plaintiff's literacy at step 5, *see Silveira,* 204 F.3d at 1261 at n.14, the *Pinto* court's rationale applies here.

1    to rely on a job description in the [DOT]...that fails to comport with a claimant's noted

2    limitations, the ALJ must definitively explain this deviation." *Id.* at 847 (*citing Johnson,* 60

3    F.3d at 1435).[11]  The VE and the ALJ must explain the deviation between the limitation and

4    the DOT.  *See Id.; Massachi,* 486 F.3d at 1153.  This was not done in the instant case.

5    Consequently, the ALJ's decision is not supported by substantial evidence, *see id.,* and

6    remand is appropriate.  *See Pinto,* 249 F.3d at 847.

7                                3.    Credibility

8           The ALJ found that Plaintiff's "medically determinable impairments could reasonably

9    be expected to cause some of the alleged symptoms; however, the [Plaintiff's] statements

10   concerning the intensity, persistence, and limiting effects of these symptoms are not credible

11   to the extent they are inconsistent with the...residual functional capacity assessment." (TR.

12   34).  The ALJ further stated:

13          The undersigned is unable to find claimant's allegations are entirely credible.
            There is really no objective medical evidence that supports the level of
14          impairment alleged.  Diagnostic imaging of claimant's spine has failed to
            demonstrate any identifiable source for her pain and her physical exams have
15          been relatively normal other than some tenderness and reduced range of
            motion shortly following her accident. Two of claimant's treating physicians
16          (Dr. Prust and Dr. Hanks) have stated they are unable to explain claimant's
            symptoms given her physical examinations.  Despite claimant's stated
17          difficulties with depression, she has been able to care for her children and
            maintain relatively stable daily living activities and it has been recommended
18          by at least one of her mental health care providers that working would benefit
            her psychological state.  The undersigned acknowledges that claimant
19          experienced a traumatic event, both physically and mentally, that left her with
            residual limitations; however, the record simply does not corroborate the level
20          of impairment alleged.

21   (TR. 37).

22          When assessing a claimant's credibility, the "ALJ is not required to believe every

23   allegation of disabling pain or other non-exertional impairment."  *Orn v. Astrue,* 495 F.3d

24   625, 635 (9th Cir. 2007) (internal quotation marks and citation omitted). However, where, as

25

26          [11]This is not to say that someone who is illiterate is unable to perform any of the jobs
27   identified by the DOT. Instead, the ALJ must definitively explain this deviation. *See Pinto,*
     249 F.3d at 847.
28

1    here, the claimant has produced objective medical evidence of an underlying impairment that

2    could reasonably give rise to the symptoms and there is no affirmative finding of

3    malingering, the ALJ's reasons for rejecting the claimant's symptom testimony must be clear

4    and convincing.[12]   *Carmickle v. Commissioner of Soc. Sec. Admin,* 533 F.3d 1155, 1160-61

5

_____

6    [12]Defendant argues that the "clear and convincing" standard for discounting credibility
7    exceeds that required by in *Bunnell v. Sullivan,* 947 F.2d 341, 345-346 (9th Cir. 1991) (*en
     banc*) where the Ninth Circuit stated that an ALJ's credibility findings must be supported by
8    the record and "'must be sufficiently specific to allow a reviewing court to conclude the
     adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily
9    discredit a claimant's testimony regarding pain.'" (Defendant's Brief, p. 15 (*quoting Bunnell,*
10   947 F.2d at 345-346 (internal quotation marks and citations omitted)).  Defendant points out
     that no Ninth Circuit panel applying  the clear and convincing standard has sat *en banc* and,
11   therefore, *Bunnell* has not been overturned.  (*Id.*).  Defendant's position is unavailing.  First,
12   "a requirement of 'clear and convincing reasons' is distinct from a clear and convincing
     evidentiary standard. *Cf. Bayliss v. Barnhart,* 427 F.3d 1211, 1216) (9th Cir.2005) ('To reject
13   an uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and
     convincing reasons that are supported by substantial evidence.' ...)." *Provencio v. Astrue,*
14   2012 WL 2344072, *11 n. 5 (D.Ariz. June 20, 2012).  Second, as Defendant points out,
15   *Bunnell* itself requires that the ALJ "specifically make findings" that are supported by the
     record, to support the conclusion that the claimant's allegations of severity are not credible.
16   *Bunnell*, 947 F.2d at 345.  Further, these findings must be "sufficiently specific to allow a
17   reviewing court to conclude that the..." ALJ rejected the testimony on permissible grounds.
     *Id.* at 345-346.  The District Court for the District of Arizona has noted that "[s]ubsequent
18   cases have merely explained that 'unless an ALJ makes a finding of malingering based on
19   affirmative evidence thereof, he or she may only find an applicant not credible by making
     specific findings as to credibility and stating clear and convincing reasons for each.' *Robbins
20   v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir.2006) (emphasis added); see also *Lingenfelter
21   v. Astrue* 504 F.3d 102[8], 1036 (9th Cir.2007).  Thus, the cases applying the 'clear and
     convincing' standard in no way overturn *Bunnell*.  Numerous cases have applied the 'clear
22   and convincing' standard, and this Court is in no position to overrule them. *See, e.g., Taylor
     v. Comm'r of Soc. Sec. Admin.*, [659 F.3d] 1228, 1234 (9th Cir.2011); *Vasquez v. Astrue,* 572
23   F.3d...[586, 591 (9th Cir. 2009)]; *Lingenfelter,* 504 F.3d at 1036; *Orn,* 495 F.3d at 635;
24   *Robbins*, 466 F.3d at 883; *Smolen v. Chater,* 80 F.3d...[ 1273, 1281 (9th Cir. 1996)]; *Dodrill
     v. Shalala*, 12 F.3d...[915, 918 (9th Cir. 1993)]." *Provencio,* 2012 WL 2344072 at *11 n.5.
25   Moreover, as discussed below, although the ALJ set forth specific  reasons for rejecting
26   Plaintiff's credibility as to the severity of her physical impairment, those reasons are not
     permissible and/or supported by the record.  Thus, the ALJ's credibility finding fails under
27   Defendant's proposed standard as well as the "clear and convincing" standard.

28

1   (9th Cir. 2008) ("We have consistently held that where the record includes objective medical

2   evidence establishing that the claimant suffers from an impairment that could reasonably

3   produce the symptoms of which he complains, an adverse credibility finding must be based

4   on "'clear and convincing reasons[]'" unless there is affirmative evidence of malingering);

5   *Tommasetti* , 533 F.3d at 1040; *Orn,* 495 F.3d at 635*; Robbins,* 466 F.3d at  883.  "The ALJ

6   must state specifically which symptom testimony is not credible and what facts in the record

7   lead to that conclusion."  *Smolen,* 80 F.3d at 1284; *see also Orn,* 495 F.3d at 635 (the ALJ

8   must provide specific and cogent reasons for the disbelief and cite the reasons why the

9   testimony is unpersuasive). In assessing the claimant's credibility, the ALJ may consider

10   ordinary techniques of credibility evaluation, such as the claimant's reputation for lying,

11   prior inconsistent statements about the symptoms, and other testimony from the claimant that

12   appears less than candid; unexplained or inadequately explained failure to seek or follow a

13   prescribed course of treatment; the claimant's daily activities; the claimant's work record;

14   observations of treating and examining physicians and other third parties; precipitating and

15   aggravating factors; and  functional restrictions caused by the symptoms. *Lingenfelter,* 504

16   F.3d at 1040;  *Robbins,* 466 F.3d at 884; *Smolen,* 80 F.3d at 1284.

17   Plaintiff challenges the ALJ's finding with regard to Plaintiff's allegations concerning

18   her physical impairment.  Plaintiff takes issue with ALJ's decision to discount Plaintiff's

19   credibility for the reason that "[t]here is really no objective medical evidence that supports

20   the level of impairment alleged."  (TR. 37).  Plaintiff points out that in March 2009, a

21   provocative discography showed severe concordant low back pain at L4-L5. (TR. 782).  In

22   June 2009, Plaintiff underwent a lumbar fusion.   (TR. 833 (including screw

23   instrumentation)).

24   Once the claimant produces objective medical evidence of an underlying impairment,

25   the ALJ may not reject the claimant's subjective complaints based solely on a lack of

26

27

28

1   objective medical evidence to fully corroborate  the claimant's allegations. *Bray v. Astrue,*

2   554 F.3d 1219, 1217 (9th Cir. 2009) (citation omitted); *Robbins,* 466 F.3d at 883 (*citing* SSR

3   96-7p, 1996 WL 374186); *Light v. Social Sec. Admin.,* 119 F.3d 789, 792 (9th Cir. 1997) ("In

4   this case, the ALJ disbelieved [plaintiff] because no objective medical evidence supported

5   [plaintiff's] testimony regarding the severity of subjective symptoms from which he suffers,

6   particularly pain. An ALJ may not discredit a claimant's subjective testimony on that basis.

7   To find the claimant not credible the ALJ must rely either on reasons unrelated to the

8   subjective testimony (e.g., reputation for dishonesty), on conflicts between his testimony and

9   his own conduct, or on internal contradictions in that testimony.").

10      Here, in contravention of Ninth Circuit authority, the ALJ discounted Plaintiff's

11   credibility regarding the intensity, persistence and limiting effects of her physical impairment

12   by relying solely on a lack of objective medical evidence supporting the level of

13   pain/impairment alleged.  *See id.*  Moreover, the ALJ's reliance on Dr. Prust's and Dr.

14   Hanks' statements in the record fail to support her conclusion.  For example, the ALJ cited

15   to treating Dr. Prust's December 4, 2007 statement that he did not have an explanation for

16   why Plaintiff has so much pain. (TR. 35 (*citing* TR. 550); *see also* Defendant's Brief, p. 17

17   (*citing* TR. 550)).  Nonetheless, Dr. Prust administered a lumbar steroid epidural injection

18   on that date.  (*Id.*).  The ALJ did not discuss the fact that Dr. Prust's statement was made

19   prior to the 2009 discography showing severe concordant low back pain at L4-L5, which led

20   to Plaintiff undergoing lumbar fusion.  Defendant argues that the discography and lumbar

21   fusion show, at best, that "for a three or four month period, [Plaintiff] had findings that might

22   have supported her complaints." (Defendant's Brief, p. 18).  The ALJ did not make such a

23   finding. Further, the record could also be reasonably interpreted to suggest that the full extent

24   of Plaintiff's lumbar issues and pain had not be assessed when Dr. Prust made the 2007

25   statement.

26      Based on the findings of the March 2009 discography, Dr. Hanks performed lumbar

27   fusion surgery in June 2009.  (TR. 833).  Prior to that surgery, Dr. Hanks' April 2009 notes

28

reflect that:

> My expectation is that she will improve.  I have no way of knowing how much.  My experience and knowing the literature seems to suggest 60 to 70 percent good or excellent results with single-level fusion.  Of course, I have told her that she may not have as good a result as this....

(TR. 861 (also noting that "[n]othing is working" for Plaintiff "and she wants to talk about surgery"); *see also* TR. 862 (in March 2009 Dr. Hanks discussed a 60-70% chance of good results, but he also told Plaintiff "about the possibility that she may not see any better than 25 percent improvement in her overall pain situation and that predicting this would be very difficult.  I also explained that it seems as though in patients with single level problems that a fusion operation often will give them some relief of their back pain.")).

The ALJ and Defendant state that post-surgery, Dr. Hanks indicated that Plaintiff "was ambulating fairly well..." (TR. 35 (*citing* TR. 856-869)); Defendant's Brief, p. 4 (*citing* TR. 856-859); *Id.* at p. 18 (*citing* TR. 856-859)).  The record reflects that post-surgery, Dr. Hanks indicated that "[s]he is able to ambulate, although she does use a cane."  (TR. 857).  Arguably, a fair reading of Dr. Hanks' record does not fully support the statement attributed to him by the ALJ which was that Plaintiff "was ambulating fairly well."  (TR. 35).  Upon Plaintiff's complaints of leg numbness, Dr. Hanks ordered a CT scan "to assess the screws...."  (*Id.*).  The CT scan showed no evidence that would suggest any significant central or foraminal compromise.  (TR.  856).  Dr. Hanks referred Plaintiff for pain management and planned to see her again three months later.  (*Id.*).  In sum, although Dr. Hanks hoped Plaintiff would experience as much as 60%-70% improvement, he acknowledged that Plaintiff may achieve as little as 25% improvement.  Although the CT scan did not show any problems, Dr. Hanks did not in any way discount Plaintiff's pain complaints.  He instead referred her to pain management.  On the instant record, neither Dr. Prust's nor Dr. Hanks' records constitute substantial evidence to support a finding to discount Plaintiff's credibility.

### 4.     Lay Testimony

Plaintiff's daughter, Carmen Barrera submitted a letter in October 2009 stating that

1    Plaintiff was in a lot of pain and that Ms. Barrera and her sisters had to help with chores.

2    (TR. 288). Plaintiff's daughter also stated that Plaintiff's concentration had deteriorated, and

3    that Plaintiff needed help when she left the house to go to the store and to medical

4    appointments. (*Id.*).

5        The ALJ rejected Ms. Barrera's statement because: "the accuracy of the statement is

6    questionable[]" because "she is not medically trained to make exacting observations as to

7    dates, frequencies, types and degrees of medical signs and symptoms, or the frequency or

8    intensity of unusual mood or mannerisms..."; she is not a disinterested witness given her

9    relationship to Plaintiff; and the statement is "not consistent with the preponderance of the

10   opinions and observations by medical doctors in this case." (TR. 37).

11       Plaintiff argues that the ALJ did not cite proper reasons to reject Ms. Barrera's lay

12   opinion. (Plaintiff's Opening Brief, pp. 16-17). Defendant counters that an ALJ may reject

13   testimony based on medical evidence and close relationship to the claimant. (Defendant's

14   Brief, p.17 (*citing Greger v. Barnhart,* 464 F.3d 968, 972-73 (9th Cir. 2006)).

15       The ALJ is required to "consider observations by *non-medical sources* as to how an

16   impairment affects a claimant's ability to work" *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th

17   Cir.1987) (emphasis added), unless she expressly determined to disregard such testimony,

18   in which case she must give reasons that are germane to each witness. *Nguyen v. Chater*, 100

19   F.3d 1462, 1467 (9th Cir. 1996) (*citing Dodrill*, 12 F.3d at 919); *see also Regennitter v.*

20   *Commissioner of Social Sec. Admin.,* 166 F.3d 1294, 1298 (9th Cir. 1999) (recognizing that

21   lay witnesses are of "particular value" because they can testify to claimant's everyday

22   activities). The ALJ's disregard of Ms. Barrera's testimony because she is not medically

23   trained "violates the [Commissioner's] regulation that he will consider observations by

24   non-medical sources...." *Sprague*, 812 F.2d at 1232 (*citing* 20 C.F.R. § 404.1513(e)(2)).

25       Further, in finding error when an ALJ rejected lay testimony from family witnesses

26   because they were "'understandably advocates, and biased'", the Ninth Circuit stated that

27   "the same could be said of any family member who testified in any case. The fact that a lay

28

1   witness is a family member cannot be a ground for rejecting his or her testimony.  To the

2   contrary, testimony from lay witnesses who see the claimant every day is of particular value,

3   *see Dodrill,* 12 F.3d at 919, ('[a]n eyewitness can often tell whether someone is suffering or

4   merely malingering...this is particularly true of witnesses who view the claimant on a daily

5   basis...'); such lay witnesses will often be family members."  *Smolen,* 80 F.3d at 1289.  *See*

6   *also Regennitter*, 166 F.3d at 1298 (same).

7         Defendant cites *Greger v. Barnhart,* 464 F.3d 968 (9th Cir. 2006), wherein the  Ninth

8   Circuit upheld rejection of lay testimony when "the ALJ found that [the witness's]...

9   'statements are inconsistent with [claimant's]...presentation to treating physicians during the

10  period at issue, and with [claimant's]...failure to participate in cardiac rehabilitation.'  The

11  ALJ also considered [the witness's]...'close relationship' with [claimant]..., and that she was

12  possibly 'influenced by her desire to help [him].'"  *Greger,* 464 F.3d at 972.  The *Greger*

13  court held that the ALJ's reasons for doubting the lay testimony were germane to the witness

14  and, thus, there was no error.  *Id.* at 972-973.

15        Defendant does not argue that *Smolen* has been overturned on this issue.  Moreover,

16  in *Greger,* the ALJ provided a sufficient reason for rejecting the lay testimony that did not

17  involve bias.  In the instant case, there was no mention of inconsistencies between the lay

18  witness and claimant testimony, or that the lay witness statement mirrored that of the

19  claimant, or any number of signs that the lay witness was unreliable.  Further, although the

20  ALJ states that Ms. Barrera's statements were inconsistent with the statements and opinions

21  of the medical doctors, it is unclear how that is so in light of the evidence of record.  For

22  example, Ms. Barrera states that her mother is in "a lot of pain, she has trouble sleeping,

23  standing or walking for a long time, bending to pick up things, and she can't drive for long

24  distances." (TR. 288).  Ms. Barrera's statement is generally consistent with Dr. Gecosala's

25  and Dr. Goodrich's findings that Plaintiff could not walk and stand for prolonged periods,

26  Dr. Goodrich's finding that Plaintiff was limited in stooping, kneeling, and crouching, as well

27  as Dr. Hanks' referral of Plaintiff for pain management and the medications Plaintiff's health

28

1   care providers have prescribed to her. (*See e.g.,* TR. 451-454 (Dr. Gecosala prescribing

2   vicodin, diazepam, and hydrocodone); TR. 52 (Plaintiff testified that her medications include

3   morphine and oxycodone)).  Ms. Barrera's comments that, since the injuries, Plaintiff cries

4   more are consistent with the ALJ's finding that Plaintiff's severe impairments included

5   depression. (TR. 32).   Finally, Ms. Barrera's statement that her mother has difficulty

6   concentrating is consistent with Dr. Fernandez-Barillas' finding, as noted by the ALJ, that

7   "claimant's thought processes were unremarkable aside from chronic intrusive recollections

8   of her accident and concentration difficulties secondary to pain."  (TR. 36).  The ALJ

9   "accept[ed] Dr. Fernandez-Barillas' opinion that claimant is limited to simple work with

10  minimal changes in the work setting...." (TR. 36-37).  Accordingly, the ALJ did not cite

11  legally sufficient reasons to reject Ms. Barrera's lay testimony.

12                          5.     Remand

13          Plaintiff requests that the Court either reverse the Commissioner's decision and grant

14  benefits or, alternatively, remand for further proceedings.  (Plaintiff's Opening Brief, p.17).

15          "'[T]he decision whether to remand the case for additional evidence or simply to

16  award benefits is within the discretion of the court.'"  *Rodriguez v. Bowen,* 876 F.2d 759, 763

17  (9th Cir. 1989) (*quoting Stone v. Heckler,* 761 F.2d 530, 533 (9th Cir. 1985)).  "Remand for

18  further administrative proceedings is appropriate if enhancement of the record would be

19  useful."  *Benecke v. Barnhart,* 379 F.3d 587, 593, (9th Cir. 2004) (*citing Harman v. Apfel,*

20  211 F.3d 1172, 1178 (9th Cir. 2000)).  Conversely, remand for an award of benefits is

21  appropriate where:

22          (1) the ALJ failed to provide legally sufficient reasons for rejecting the
            evidence; (2) there are no outstanding issues that must be resolved before a
23          determination of disability can be made; and (3) it is clear from the record that
            the ALJ would be required to find the claimant disabled were such evidence
24          credited.

25  *Benecke,* 379 F.3d at 593(citations omitted).   Where the test is met, "we will not remand

26  solely to allow the ALJ to make specific findings....Rather, we take the relevant testimony

27  to be established as true and remand for an award of benefits."  *Id.* (citations omitted).

28

1   Until the unresolved matters identified throughout this Order, *supra,* including proper

2   assessment of Plaintiff's credibility and lay witness testimony, are resolved, it is not clear

3   from the record that the ALJ would be required to find the claimant disabled.  Accordingly,

4   the appropriate remedy in this situation is to remand the case to the ALJ  for further

5   proceedings consistent with this Order.

6   **V.    CONCLUSION**

7   For the foregoing reasons,

8   IT IS ORDERED that the Commissioner's final decision in this matter is

9   REMANDED for further proceedings consistent with this Order. The Clerk of Court is

10   instructed to enter judgment accordingly and close this case.

11   DATED this 25th day of September, 2012.

13   _____

Héctor C. Estrada
United States Magistrate Judge